The next case is Polaris Industries v. Arctic Cat, 2016, 1807-2280. Mr. Vandenberg. Thank you. Good morning, Your Honors. May it please the Court. This is the case involving Polaris' industry-changing all-terrain vehicles. By selecting specific components and packaging them together in a specific arrangement. These are all old components. There are only so many things you have to work with. A fuel tank and seats and an engine. But there are very, very many permutations of all those components. And what Polaris did was package them together in a way that created a new category within the ATV industry. Hugely commercially successful and copied by others. You mean a new category or a new name? No, it's a new category. The sport side-by-side all-terrain vehicle is recognized in the industry. We put in this evidence as a separate category that has resulted in literally over a billion dollars of sales for Polaris. Even if we agree with you that Denny is directed to a dune buggy as opposed to an ATV, I don't understand why that still doesn't make them analogous arts. We're not saying that this is a non-analogous art issue. The issue for Denny is two-fold. And particularly I'd like to focus, because we raised a lot of claims, but I'd like to focus this morning specifically on claims 17 through 19. And the reason is, there's a couple of reasons, but one is the sheer number of changes that you need to make to Denny to get from it to claims 17 through 19. 17 through 19 are part of the string of dependent claims that keep adding more detail to the vehicle, so that by the time you get to even just claim 17, you need to make six changes to Denny. But they're all well-established things. Adding a fuel tank? It's not simply a matter of adding the features, it's where they are added. And again, this is a packaging invention where you need to put all these components together in a vehicle, and that placement interacts with one another. So where you decide to do one thing is going to affect what you do with others. Again, we came up with an overall package that was unique and successful. You focus on the board's subjective preferences analysis, which I have to agree I do have some issues with, but putting that aside, couldn't we read that as just sort of maybe a loose way to say that Denny really doesn't teach away from making all of these adjustments and that there would have been a motivation to combine all of these things? I wouldn't agree with that, Your Honor. They essentially re-characterized what is clear teaching away evidence. And again, this isn't simply Denny saying a certain design was preferable. He criticized the alternative. Don't have a vehicle like the secondary reference for a Hashi where you have that higher center of gravity. Instead, put the seats at the very bottom of the frame where you can maximize the low center of gravity. So first of all, it would simply be incorrect to characterize that as not teaching away. Arcticat didn't argue that it was not teaching away. And that's where I think I really want to focus the analysis on subjective preferences relative to claims 17 through 19. Because the board's fundamental error on that point was in assuming that the issue for claims 17 through 19 was the same as it was for claim 1. You think your argument regarding 17 and 19 is stronger than the commercial success argument relating to claims in the 30s? I think they're both equally strong. And my hope is to talk about 17 through 19 and then talk about 34 and 36. Well, I'd like to hear about commercial success. Well, and I appreciate that, Your Honor. Our argument there is really quite simple. The board rejected commercial success simply because it found that Polaris' experts' declaration saying that the Polaris products are covered by the claims, they characterized it as conclusory. And, Your Honor, there's simply no basis to do that. It was pretty short, but for a mechanical invention like this, it shows that he performed the exact methodology required. For mechanical invention, you read the patent, you construe the claims, you look at information relative to the products, and he said he looked at the products, the manuals, the parts drawings, and he found all of the elements in there. But he didn't attempt to explain where any of those elements were, even in a summary fashion. I get it. I mean, this one to me seems very close. I mean, you have a declaration, but it is pretty bare bones. It says, I looked at the patents. I've looked at these vehicles. They're covered by the claims. You know, if I was the board, maybe I could accept that, but we're reviewing them in a pretty deferential standard here on whether to accept expert evidence or not as credible. And this seems conclusory to me without any attempt to map the claims to the parts of these vehicles. How would your opponent know how to challenge that in a deposition or something like that? It's a very interesting point, Your Honor, because these parties have been locked in litigation for years. They have our vehicles. And if they had a basis to dispute our expert, they could have said so. And that's what really tips the scales here. But here's the problem, though. I get that. And if I were the board judge, I may have said, this is good enough for me. If you wanted to challenge it, you should. But I'm not reviewing that on a de novo standard. I'm determining whether the board was within its authority to reject this as conclusory. And I think that it seems like there's no abuse of discretion there, or if you want to term it as a substantial evidence review, that there's not a lack of substantial evidence. This court has set up a legal standard for analyzing undisputed evidence on this issue of whether a patentee's own products are covered. They say that when the patentee is presented undisputed evidence that its product is the invention disclosed in the challenge claims, it is error for the board to find the contrary without further explanation. But can we go so far as to say it doesn't matter how slim that undisputed evidence is? It makes sense in this case. It's not just the evidence itself, but there is other indicia of reliability associated with this expert's testimony. He didn't just make a blanket statement that says Polaris's products are covered by the patent. He didn't go much further. He called out specific claims, and he acknowledged that other claims weren't covered. No, I get all that, but I know the case you're citing too, and we can read it ourselves and determine, but I don't think it changed any evidentiary standards. I think it still means the board can reject expert evidence as conclusory if it wants to, and that's what it did here. Ultimately, though, again, just digging further into PPC, when it talks about further explanation, it's just not putting a label on it like that. It's saying what's missing in the case. They had, again, Arcticat could have come forward and identified something, said, well, look, look for this feature, look for that feature. The other thing that the board overlooked here is that there is a lot of record testimony showing the details of these products. We put that in our reply brief. Mr. Vandenberg, what about the board's statement that there was no nexus between the commercial success and the claims? Does nexus have anything to do with this, if the claim covers the vehicle? Your Honor, this is, nexus is a critical issue here, but this is where our first error, that the board just erred in concluding that we hadn't proved that our products were covered, is critically important, because the precedent of this court is clear, that once there's a showing the products are covered, there is a presumption of nexus, and the shoe goes to the other foot, as this court said in the Dimacco case. In this case, Arctic chose not to put any evidence in on the nexus issue. They chose not to put any evidence in on whether the product was covered, and they chose not to put any evidence in on the nexus issue. In other words, you're saying there's a presumption of nexus. There's a presumption of nexus. Ultimately, when you get to the final issue of, is this an obvious invention, this is exactly the sort of case where commercial success should tip the scales in favor of non-obvious. Now, when might nexus be refuted when the product is covered by the claim? Would it be refuted if there were evidence that this product simply supplanted a previous one that had similar market share, and therefore it wasn't the success of this product so much as previous ones? I think there are cases that suggest that that might not even be enough, but they can't put forth that case here because, again, this was a new type of product. It did not supplement some old product that went away. It took share away from other competitors, and we put evidence of that also in the record, but it wasn't just supplanting a Polaris product. They would need to show that it was something that Polaris did. It was all about its advertising or something else, but that just doesn't make sense here as well. It was the industry that latched onto this as a great invention. Again, this is a competitive industry. If this were such an obvious invention, any one of these other competitors would have loved to get that billion dollars plus worth of sales. The fact that they didn't come out with it sooner makes this exactly the sort of case where commercial success should tip the scales. You're into your rebuttal time. I am into my rebuttal time. I would like to go back to claims 17 through 19 because the fundamental error that the board made there was in assuming that this subjective preferences issue was the same for 17 through 19 as it was for claim 1, when it's clearly not. You refer to this being a packaging concept or innovation. Anytime we're doing obviousness analysis where we're combining two references, we're packaging things together. Is it just that you have to package more things and so therefore it's a problem? We are packaging a lot of different things. Again, many differences relative to the Denny case, but also ultimately you're trying to create a vehicle that has the right balance of features. That is maneuverable, stable, safe, all those things that you're looking for in a vehicle. You need to put everything together to try to maximize that and that's what Polaris did in this case. If a person of ordinary skill would have thought to do that, it can be obvious, right? The mere fact that one skill in the art could have done it, there has to be a motivation to do so. I have issues myself with the board's subjective preference language. It seems a strange way to look at this. I thought that there was expert testimony from your friend's side explaining why it would be obvious to put the fuel tank on one side, put the battery on the other side and the like. If that's the case, isn't that substantial evidence for that conclusion? It isn't in this instance, Your Honor, because they don't dispute that in order to do that, you would have to raise Denny's seats. Okay, but that's a different question than the subjective preference stuff. In order to win that argument, you have to convince us that Denny teaches away, right? Certainly, a key part of our analysis is teaching away. If Denny doesn't teach away, if it just suggests this is a preferred embodiment, this is our invention, we think it's better than this alternative, not explicitly, don't do this because it doesn't work. I mean, we all have our standards for teaching away, but if Denny doesn't teach away, then why isn't your friend's expert testimony enough on these claims? Because you're not trading off one benefit for another. They did their subjective preferences analysis in the context of Claim 1, where we were trading off one benefit, center of gravity, against a different benefit, four-wheel drive. But when you get to Claim 17 through 19, there's no trading off of A and B. It's two A's. They're basically saying trade off putting heavy people right at the bottom of the frame for stability purposes versus raising those seats so we can put something much lighter under the seat, a gas tank or a battery. So the whole idea, to the extent subjective preferences, dealt with balancing trade-offs and saying, OK, he teaches away from it, but not that strongly. It doesn't apply when you get to those points. Mr. Vandenberg, I think you probably do want to save some time. Thank you, Your Honor. Mr. Herakles. Yes, Your Honor. Good morning, Your Honors, and may it please the Court. This case is about a patent that in 2006 claimed as novel a rear-engine vehicle with four-wheel drive. And there are other claim limitations aside from that core aspect of the invention, like the fuel tank and the battery position. But this is a field where all of the relevant components in this patent were known and the various advantages of locating those components in different positions, as those advantages relate to maneuverability or balance of the vehicle, were known and in this case supported by substantial evidence. The argument is that this collection and arrangement of parts created a whole new industry. Well, I think from a commercial perspective, perhaps, but it's not something that's novel. It's a separate vehicle category, but not a novel idea. It's a company that had to cap it. You're talking about obviousness, right, not novelty? Yes, Your Honor. So under your theory, basically, no one could ever come up with a new ATB that could be non-obvious? Well, I think given these features that we're talking about in this patent and given the evidence about the motivation of where to locate those components, in this case that's true. I'm not saying that there's not an instance in which a new arrangement where there was nothing found in the prior art or no motivation to implement it couldn't result in a novel, a non-obvious patent. Part of my problem with this subjective preferences test sort of ignores some basic principles, like, you know, what are some of the grand factors? I mean, they never really did analyze exactly what the prior art showed and what the differences are between the prior art and this claimed invention. Instead, they just said, well, you would have just stuck all this stuff in there and it doesn't matter that you would have not been accomplishing a lot of the things that the patent was trying to accomplish. That Denny was trying to accomplish? Yes, or that ultimately the patent was trying to accomplish, that you could readjust all of these things and just change the whole dynamic? Well, I don't think the board was saying that you would change the whole dynamic. I think the board was looking at the motivations to implement these different features and that they were found in Furuhashi, these sort of other components, the driveshaft, the gas tank, and the battery, and that there would have been known reasons to implement those in Denny's frame to get the benefits of balance and maneuverability that would come from it. But they didn't tell us that. They just used this weird subjective preferences language, which sounds to me like they're almost calling it a design choice. But these can't be design choices because placing these different components in different parts have functional results. Do you agree with that? It's not just a design choice to put the fuel and the battery under the seat versus behind the seat or other places. Yeah, I agree, Your Honor. It's not just a design choice. A couple of things. I don't think the board rested on its design choice language. In the board's opinion, specifically appendix. At least with regard to 17 through 19, they didn't explain why it would be obvious to put the battery and the fuel under the seats, did they? I think they did, Your Honor. With respect to the fuel tank, the board looked at the evidence cited by our expert, and our expert said that there are advantages to locating heavier components towards the center of the vehicle, towards the center of gravity. One of those locations is under the seat. Our expert, Dr. Davis, submitted evidence on that point. That's at appendix 31, and the board credited it. All the board found was it said a person of skill in the art would have known how to balance preferences and that it could have just ignored Denny's preferences. Well, I don't think the board is saying that they would have ignored Denny's preferences. I think what the board is saying is that, and this goes back to appendix 20, that one of ordinary skill in the art would have had the ability to balance those preferences. But it says so they could decide they want to ignore Denny's preferences, but that's not the way you're supposed to look at what's in the prior art, right? You're supposed to see what the prior art teaches. I think that's right. It's what you can pick and choose out of it. I think that's right, but I don't think that Denny's preferences or teaching are a teaching that's incompatible with the combination here. Denny suggests... Well, the board specifically said you can create this combination even though it is inconsistent with Denny's preferences. Well, I think what the board says... And they said even though it would outweigh Denny's preferences. I think they're saying that the... They used the word outweigh the benefits of Denny. I think what the board is saying, although perhaps inartfully at times, is that a person of ordinary skill could consider Denny's preferences and find, as Your Honor said, that they do not outweigh the benefits of modifying Denny to include Furuhashi's teachings. And I think... Am I incorrect? Furuhashi doesn't have the battery under the seat, does it? It only has the fuel tank. Nobody has the battery under the seat. That's correct, Your Honor. Furuhashi's teaching is a fuel tank under a single-seat vehicle, the drive shaft to the right, and the battery to the right of that. And our expert's testimony was that one of ordinary skill would be motivated to implement that single-seat configuration in a two-seat configuration to get the balanced benefits. Right, your expert says that, but the board didn't rely on your expert for that point or didn't explain why your expert was correct. Yeah. The problem I'm having here is we have a very limited number of components that can be combined in a bunch of different ways. And if we accept the board's reasoning, it seems like in those cases where there's limited components and limited combinations, they're all obvious, even if nobody ever thought of it before. And the board doesn't give an explanation for why one would have come up with that particular combination. Well, so I think a lot of this goes back to the issues that were disputed before the board. And Claim 19 in particular, which I think where your honors question is focused to, which really wraps in the battery and the fuel tank with the drive shaft running between those components, the dispute before the board was very limited. And as I mentioned, our DECATS expert introduced evidence as to why you would have implemented these features in the way that Furu Hashi teaches. The only dispute from Polaris that Polaris presented to the board, and this is at Appendix 336, and their response, the only disputed issue was that this would have been contrary to Denny's teachings. So there wasn't a dispute about the benefits of this location or that one of ordinary skill would have known of those benefits. The only dispute was that it would have been contrary to Denny's teachings. But it was more than just the center of gravity teachings. In other words, everything that... There was multiple things that Denny was attempting to accomplish, all of which would have been undone. I don't think that's... What Polaris focuses on is raising the center of gravity. Denny says you want a very low center of gravity. He says it's an attractive feature. But there's also the distribution of the weight. There is the longitudinal distribution of weight, and I think that argument goes to Claim 34, where Denny wants essentially, longitudinally, a short wheelbase. But I don't think they're raising that argument in the context of raising the seats. And that's not something... Raising the seats would not impact the wheelbase of Denny's vehicle. So where do you see an actual analysis, as the Supreme Court requires under KSR, of spelled out clearly the motivation to combine all of these prior art elements? I think where the board lays that out most robustly is with respect to its analysis of Claim 1. And it addresses the motivation to implement this four-wheel drive, and it addresses the argument that Denny teaches away from that. And ultimately, on Claim 20, it reaches the conclusion that one of ordinary skill would weigh the preferences and find... would have had the ability to balance those preferences and implement Furuhashi's teachings. And so you don't have anything specific on 17 through 19? Well, what I think the board does, then, is because the issue before the board on 17 through 19 really, really was the same as it was for Claim 1, and that was would it... Which is adding in more components. They're adding other components, and the board had evidence that there are advantages of those components. The board cited to the contrary evidence from Polaris's expert and found it not credible. But really, the core analysis, I think, is the same. And you see the board referencing back to their more robust analysis on Claim 1 when finding Claims 17 through 19 obvious. What about commercial success? I mean, the problem is you never disputed commercial success, right? I think... I don't think that's quite right, Your Honor. We did not introduce evidence to challenge their conclusory assertion about embodying the... But you never disputed it at all. No, that's not true. We did. We disputed that there was a nexus. But did you dispute that it had embodied the invention? We disputed that they had introduced adequate proof to meet their burden of production. But the one line is not the only thing that the board should look at. I mean, under the APA, they're supposed to look at the entirety of the record as a whole. And there was a lot of evidence with respect to how these elements fit into the practicing device, correct? There was commercial success evidence showing the vehicle itself. And the board could look at that and see where the engine is. And they said it was pretty easy to figure out where all these parts are. I mean, if you look at the rest of their argument, which is anybody could have put all this stuff together, then how could the board say that they can't look and see whether or not this expert testimony was correct, regardless of how conclusory it was? Because I think they have to do... Polaris has to introduce more than mere conclusions here from their expert. Why? If it's that easy? If the technology is as easy as the board said it was, why isn't that enough? Well, I think because it's essentially asking the board to call in the entire record for this rather than having... In some ways, they can say we can easily put all this stuff together and decide that it's just design preferences. But when you've got an expert that ties each element to each claim, that we can't figure that out? Well, I don't think the expert was tying each element to each claim. And it goes not just to the embodiment issue, but also to the nexus issue. If you recall, the board found that there was no nexus here. But the board found there was no nexus after saying we refused to presume a nexus. Well, and I think that in the presumption of nexus analysis, there's a threshold evidentiary question that there needs to be evidence as to how the product maps up to the claims, if at all, in order for the board to assess whether it's reasonably commensurate in scope with the claims. And that evidence just wasn't in the record for the board to be able to conduct that analysis. It's only a preponderance of the evidence standard, correct? That I did... You've got one expert saying it does, and you've got all this other evidence about how the system works, and you put in zero evidence. Where's the preponderance? Well, I don't think that there's not a preponderance because, as the board said, there were simply conclusory statements and no analysis whatsoever. And I think the board was within its discretion here to find that there wasn't substantial evidence to make a finding that Polaris had met its burden of production. I'd like, Your Honours, if I could move to the cross-appeal. Go ahead. I think at this point in the briefing, all parties are in agreement that the board's construction was too narrow. The board required that the driveshaft extend the entire distance between the transmission and the axle assembly. And under either our construction or what Polaris appears to be now offering, there are... Even if we agree with you on that, how does that help you? Because there's another limitation that you don't even address. And what is that, Your Honour? That the board found that was not satisfied. Let me go back and pull it out for you. Um... So the board found that the different limitation that's not at issue on appeal was not satisfied. So that they agreed that the shaft structure that transmits torque together with connecting hardware excludes interactional differentials. The board rejected that construction and instead construed the term differently. I believe Your Honour is referencing their construction of the driveshaft term. Yeah. Even if the board's finding on the driveshaft term is upheld, under our construction, there is still a long straight shaft that would fall within the court's construction of driveshaft that would meet the definition of extending between. So even if the driveshaft construction is upheld, with our construction... But you would have to agree, though, that if that construction's upheld, the driveshaft is upheld, then there's a limitation that's not being practiced. No, that's not true, Your Honour. Because there does remain a driveshaft in Hickey's vehicle that runs... that is a solid piece that is a driveshaft under the court's construction. I think what the board was finding that the driveshaft doesn't extend all the way because there are additional pieces other than that middle shaft. Other than that middle shaft. All right, your time has expired. We will give you a minute for a cross-appeal if CrossAppellee discusses that issue to give you the opportunity to rebut. Thank you, Your Honour. Mr. Vandenberg. Your Honour, you're putting me in a spot there. I do want to talk just briefly back to Judge Hughes's question about... I want to ask you about 17 to 19, if you can. Okay, please. So here are the two issues. Let me just start with this. Assume I disagree with you that Denny teaches away, and then place your response in response to your friend's suggestion that the board was merely carrying over the theory it had for Claim 1, and assume I agree with the board on Claim 1. Given all that, and if we find that the board has found for Claim 1 that a person with ordinary skill can make all these trade-offs for weight, function, and the like for Claim 1, and I affirm that, why can't I affirm that for Claim 17 and 19? Two reasons, Your Honour. One is because ultimately their analysis of Claim 1 didn't require raising the seats. It didn't require any balancing. They ultimately said you could put the front drive shaft into Denny without having to raise the seats. So there was no trade-off analysis for Claim 1. There clearly needs to be one for Claim 17 through 19, because nobody's saying that you can't... in order to put these elements in. And then my second point is, and I believe I tried to say this before, you're not trading off benefits at that point. What is the motivation? Ultimately there has to be a motivation. Their expert merely gave a motivation to put a gas tank or a battery under a seat. He didn't say there was a motivation to lift a seat up, to lift 400 pounds of passengers. So you think that even if the board had done the analysis and had relied on their expert, it would still lack substantial evidence. Indeed, and that's why we believe you shouldn't just vacate on that issue because they didn't do the analysis. You actually should reverse. Briefly on the issue of... I'll give you a minute. Oh, thank you, Your Honor. Did the board abuse its discretion in finding that our expert's declaration was conclusory? In addition to the PPC broadband case we cite, we also cite a PTAB case, the Intraplex Technologies case. And certainly we dug into the briefs in that case and showed to this court that there was no more evidence in that case than there was here. And the board there simply said, yeah, that's good enough. One way that an agency can abuse its discretion is to reach different conclusions in different cases without a basis for distinguishing between the two. Here, we again have the simplest of technology in terms of, you know, it's mechanical, you can look at it, all you need to do is hold it in front of you and you can see where the elements are. There's no basis to distinguish the Intraplex case. Thank you very much, Your Honor. Thank you, Mr. Van Den Berg. Mr. Herrigus, there is nothing to rebut on the cross-court. Thank you, Your Honor. We'll take the case on revised.